GARRETT *v.* BUTLER.

5-1651                                                317 S. W. 2d 283

Opinion delivered November 10, 1958.

*Wiley A. Branton,* for appellant.

*Sam M. Levine,* for appellee.

PAUL WARD, Associate Justice.   This appeal deals with the restoration of a lost will, and with legal rules

and presumptions as related to facts which, for the most part, are undisputed.

Rev. John H. Garrett died on September 26, 1956, leaving no spouse or issue but a number of collateral heirs. When no will was found immediately his brother, George Garrett, was appointed administrator of the estate which consisted primarily of a house and lot valued at $2,500.

On April 19, 1957 Thomas A. Butler (a nephew of the deceased's late wife), appellee, petitioned the Probate Court for the restoration of a lost will which purportedly devised a large portion of the estate to him. All heirs of the deceased were given notice of the petition. George Garrett, the administrator, and Theodore Jones (to whom some of the estate property had been sold) filed a general denial. Upon a full hearing the trial court found the issues in favor of Butler, and this appeal follows.

The only point relied on for a reversal is thus stated by appellants: ''The court erred in finding that the proffered will should be restored as a lost will and admitted to probate.'' The above point suggests two questions to which we shall direct our discussion. *One,* was the execution of a lost will proven and, *Two,* if so, was the will revoked?

*One.* There is little doubt that Rev. John H. Garrett did execute a will leaving to appellee the property in controversy. In fact this is not seriously questioned by appellants. The proof shows that such a will was written by the deceased's attorney and that it was properly executed and witnessed. A carbon copy of the original will, introduced into the record, shows it was executed in January 1950.

*Two.* Whether or not the original will was revoked presents a more difficult question, although the testimony relating thereto is not in conflict.

Appellee, in substance, testified: I am 43 years old and have lived in Chicago for the past 10 years, but

prior to that time I lived in Pine Bluff, Arkansas, with Rev. Garrett, — from 1925 to 1941; I considered him my father, he put me through school, supported me, and treated me as a son; Rev. Garrett sent me a will in January 1950, and also wrote me a letter dated January 12, 1950 in which he said to keep the will; I read the will and it seemed to be identical with the copy which has been introduced; On January 24, 1956 Rev. Garrett wrote me to send him the will because he wanted to put it on record and I sent it to him sometime in February or March; After that (in August) I visited deceased — he was almost deathly sick when I arrived, but I noticed no difference in the way he treated me; He gave no indication he had made any changes in his will, and; In about two weeks he died and I returned to Chicago. Before leaving, and after Garrett's death I looked for the will and couldn't find it but I did find the envelope in which I returned the will in a drawer in his room. George Garrett and others were present when I was looking for the will. Clarence Burton, a witness for appellee, testified: Rev. Garrett talked with me as though Butler was his son; He confided in me about his affairs; I was with Rev. Garrett every night for about two weeks before he died; He discussed with me the disposition of his property about a month before he died; He had given me a $1,000 insurance policy, and he told me to present it at his death and that Tom Butler would be the administrator, and; He also said Butler would know what to do with the rest of his property. Frank Anderson, who lived in Pine Bluff 14 years and who lived in the house with Rev. Garrett 6 years, said he signed for the letter (containing the will) which appellee sent from Chicago; that he saw deceased looking at the envelope several times; that he saw George Garrett and his aunt looking through deceased's papers after he died; that there were a number of people prowling through his effects; that George was in his house about 2 weeks before Rev. Garrett died, and a lot of people had access to where the deceased kept his papers; that he saw the envelope while Butler was there about two

weeks before Rev. Garrett died. The testimony of the wife of Frank Anderson was to the same effect.

No testimony was offered on behalf of the appellants.

It is appellants' firm contention that the will of Rev. Garrett was revoked and that the trial court erred in not so holding. This contention is bottomed on Ark. Stats. § 60-304. This section, in all parts material here, reads as follows:

"No will . . . shall be allowed to be proved as a lost or destroyed will, unless the same shall be proved to have been in existence at the time of the death of the testator, or be shown to have been fraudulently destroyed in the life time of the testator."

It is then pointed out by appellants that there is no direct and positive evidence showing the will was in existence at the time of Rev. Garrett's death, or that it was fraudulently destroyed before his death. In the absence of such evidence and since it is admitted that the will could not be found, say appellants, the law presumes Rev. Garrett revoked his will. To show there is such a presumption appellants quote from 57 Am. Jur., Wills, § 549. We agree with appellants, and also note that the same presumption was recognized in *Rose* v. *Hunnicutt,* 166 Ark. 134. (at page 137) 265 S. W. 651 where we said: "It will be presumed that a testator destroyed a will executed by him in his lifetime, with the intent of revoking same, if he retained custody thereof, or had access thereto, and if it could not be found after his death." It must be admitted that the facts in the case under consideration fall within the provision set out in the above quotation. However, immediately following the above the court said this: "This presumption may be overcome by proof." This court also said in *Porter* v. *Sheffield, Administrator,* 212 Ark. 1015, 208 S. W. 2d 999 and in *Bradway* v. *Thompson,* 139 Ark. 542, 214 S. W. 27, that such a presumption of revocation could be overcome with proof. In the *Bradway* case, which dealt with a factual situation similar to that here involved, the

court considered the same statute as is now § 60-304 above quoted from, and sustained the trial court's holding that the presumption of revocation had been overcome.

After careful consideration of the weight to be given to the facts and circumstances in this case as set forth above, we cannot say the trial court's finding is against the weight of the evidence. The proof is clear that Rev. Garrett made the will in question, and that he had good reasons for making appellee his chief beneficiary; that nothing occurred to change or alter those reasons; that he indicated to disinterested witness shortly before his death he expected appellee to have some control over his affairs after his death and; that there is a total absence of any testimony he tried or wanted to make any change in or revoke his will. There are also in the record other circumstances which the trial court had a right to consider. During Rev. Garrett's last illness many people had the opportunity to handle and destroy or misplace the will. One of these was the appellant, George Garrett, who was an interested party and who failed to testify.

The vital question with which we are concerned of course is whether or not the will was revoked. We are confronted with no proof but with a presumption only that it was revoked. We think the testimony and attending circumstances are sufficient to overcome that presumption. As was said in the *Bradway* case, *supra,* in speaking of the problem facing the trial judge in this kind of a case: "It was not indispensable that he should determine what became of the will. It was enough that he should find that it was not revoked or cancelled by the testator."

We do not agree with appellants that the burden was on appellee to overcome the presumption of revocation by clear, satisfactory and convincing evidence. The rule which appellants would apply has apparently been adopted in some other jurisdictions, but we have held

that, in such cases, only a preponderance of the evidence is required. See *Bradway* and *Reynolds, supra.*

Affirmed.