Kathryn Keith TUCKER *v.* Alice
Meredith Tucker STACY et al

80-298                                          616 S.W. 2d 473

Supreme Court of Arkansas
Opinion delivered May 18, 1981
[Rehearing denied June 22, 1981.]

*J. R. Nash*, for appellant.

*David Solomon*, for appellees.

DARRELL HICKMAN, Justice. This is an appeal from the chancellor's finding that the appellees had proved that Alice Moore Tucker's will was lost or destroyed by accident. After so finding, the chancellor ordered the will admitted to probate since the parties had agreed to consolidate the probate and chancery proceedings.

The appellant, a granddaughter of Alice Moore Tucker, alleges that three of the chancellor's findings were wrong. She challenges the findings that the testator had the mental capacity and was unduly influenced, the execution and contents of the will were properly proved, and the presump-

tion of revocation was overcome by the evidence. We affirm the chancellor's findings.

A photocopy of Mrs. Tucker's will was produced as evidence of the missing original. The original was drafted in longhand by a Mississippi lawyer and provided that most of Mrs. Tucker's property would go to three of her grandchildren in equal shares. Those beneficiaries are the three appellees, the children of one of Mrs. Tucker's two sons. The appellant is an adopted daughter of Mrs. Tucker's other son. She was to receive only $250.00 under the will. The lawyer who wrote the will was the father-in-law of one of the appellees. He was visiting in Hughes, Arkansas, and it was suggested to him that Mrs. Tucker wanted to see him regarding a will. He went to her home and, according to his testimony, Mrs. Tucker said that she wanted a will drawn with everything to be left to her three grandchildren, the appellees. He drafted this will in longhand and it was witnessed by a Mrs. Moore who at the time was living with Mrs. Tucker and a friend, E. J. Chaffin, Jr. According to the lawyer, no one influenced Mrs. Tucker or suggested to her that the will should be so drafted; it was Mrs. Tucker's decision. He said that after he drew the will Mrs. Tucker mentioned that her deceased son had an adopted daughter in Florida. They discussed the need to include the appellant and the lawyer came back the next day and redrafted the will, leaving the appellant $250.00. The other provisions were left the same. The same two witnesses were called in the next morning, August 6, 1974, and witnessed this document. The copy submitted was of this revised will. Both attesting witnesses testified at the trial and said unequivocally that the document contained their signatures, although they could not testify as to the contents of the will. The lawyer testified as to the contents and said he caused the copy to be made and that he had kept it. Several other witnesses testified that Mrs. Tucker had said she left her property to the three appellees.

About seventeen months after Mrs. Tucker signed the will she was declared incompetent and a guardian was appointed. At that time she was about eighty-six years old; she was eighty-nine when she died. There was a sharp conflict in the testimony as to the relationship that existed

between the appellant and her grandmother. It is not disputed that the appellant went with her mother to Florida when her parents were divorced; she was twelve at the time. Her father remained with Mrs. Tucker in Hughes, Arkansas. The appellant admitted she had not visited her grandmother since she was eleven or twelve years old. Several witnesses testified that to their knowledge the grandmother and the appellant were not close and that when Mrs. Tucker referred to her grandchildren she specifically mentioned Meredith, Dee, and Tom, the appellees. The appellant and her mother testified that they regularly talked to Mrs. Tucker on the telephone and that Mrs. Tucker considered the appellant a granddaughter just like the other grandchildren.

The appellant challenged the will on several grounds and questioned the handling of her father's estate and the guardianship of Mrs. Tucker. These proceedings were tried together. However, on appeal only three issues are raised.

The first issue concerns the proof regarding the lost or destroyed will. The suit was originally filed by the appellees in chancery court to prove that the photocopy was in fact a copy of a lost or destroyed will and should be considered the valid last will and testament of Mrs. Tucker. The controlling Arkansas statute is Ark. Stat. Ann. § 60-304 (Repl. 1971) which provides:

No will of any testator shall be allowed to be proved as a lost or destroyed will, unless the same shall be proved to have been in existence at the time of the death of the testator, or be shown to have been fraudulently destroyed in the lifetime of the testator; nor unless its provisions be clearly and distinctly proved by at least two [2] witnesses, a correct copy or draft being deemed equivalent to one [1] witness.

The appellant's argument regarding the proof is that a photocopy is not necessarily a correct copy and that the two witnesses did not verify the contents of the will. The appellant suggests fraud and points out that it is possible by photocopying to transpose a witness's signature. The copy was introduced and both attesting witnesses said that it was

their signature on the document. There is no evidence that transposition of the signatures occurred in this case. The attorney testified that he kept the copy in his possession. Both the attesting witnesses and the attorney testified as to how, when, and where the will was signed and their testimony is not in conflict. The trial court found that there was clear and convincing evidence that the will was in fact executed and that its provisions were proved according to the law. This meets the burden of proof for a lost or destroyed will. *Bradway* v. *Thompson*, 139 Ark. 542, 214 S.W. 27 (1919). We cannot say that the chancellor's finding was clearly wrong. Rules of Civil Procedure, Rule 52.

The second argument is that the appellees had to prove beyond a reasonable doubt that Mrs. Tucker had the mental capacity to make the will and that there was a lack of undue influence. This precise point was not raised at the trial level. The burden of proof is different where a benficiary draws a will. We have held that when a will is drafted or caused to be drafted by a substantial beneficiary then it must be proved beyond a reasonable doubt that the testator had the capacity to make the will and that there was no undue influence. *Greenwood* v. *Wilson*, 267 Ark. 68, 588 S.W. 2d 701 (1979). At the trial level the appellant simply argued a lack of mental capacity and undue influence. That allegation must be proved by a preponderance of the evidence by the one making that claim. The chancellor found that the appellant failed in that burden. In order to set aside that finding we would have to say the chancellor was clearly erroneous. Rules of Civil Procedure, Rule 52. The issues involved a determination of the credibility of the witnesses, which is a matter within the exclusive province of the chancellor. *Orsby* v. *McGee*, 271 Ark. 268 (1980). Evidently the chancellor was satisfied that neither the lawyer nor any of the relatives who might benefit from the will unduly influenced Mrs. Tucker. Seventeen months after the will was drafted Mrs. Tucker was declared legally incompetent but there is no evidence that she was legally incompetent at the time that she made the will. *Yarbrough* v. *Moses*, 223 Ark. 489, 267 S.W. 2d 289 (1954).

The final argument is that the presumption that a lost

will has been revoked was not overcome by the evidence. After listening to all of the testimony, the chancellor was of the opinion that the will had either been lost or accidentally destroyed. He specifically found three things which supported that judgment. First, he found that all of those witnesses most familiar with Mrs. Tucker testified that during the period following the making of the will Mrs. Tucker became more and more forgetful and less able to care for herself and her affairs. She developed a habit of tucking things away and forgetting where she had put them. Papers were found all over the house after she died. Second, some seventeen months after the will was executed, Mrs. Tucker's mental processes had so deteriorated that she was adjudged incompetent and a guardian was appointed to take care of her person and estate. She died in that status. Her condition weakened the presumption of intentional destruction. Finally, during the last six months of her life, she was confined to a nursing home where she was separated from her residence and personal belongings. There was no evidence that she returned to her home or had custody of its contents. The chancellor cited *Markofske* v. *Cotter*, 47 Wis. 2d 769, 178 N.W. 2d 9 (1970) for authority that when one is confined to a home without any control over one's papers this is a fact to be considered in overcoming the presumption of revocation.

On this record we cannot say that the chancellor was wrong in his findings. Consequently, the decree is affirmed.

Affirmed.

GEORGE ROSE SMITH, J., concurs.

HOLT, J., not participating.

GEORGE ROSE SMITH, Justice, concurring. It may not be amiss to point out, for the information of the bar, that our jurisdiction of this case does not rest on Rule 29 (1) (p), as the appellant asserts. *Construction* of the will is not involved. Rather, our jurisdiction is derived from Rule 29 (1) (c), encompassing the construction of statutes. The appellant argues that a Xerox copy of a will is not a "copy" within Ark. Stat. Ann. § 60-304 (Repl. 1971); so we are called upon to construe that statute.