John GILBERT *v.* David GILBERT, Executor of the Estate of Ira Dee Gilbert, Deceased

CA 93-1027                                    883 S.W.2d 859

Court of Appeals of Arkansas
Division I
Opinion delivered October 5, 1994

*Davis & Cox*, by: *James O. Cox*, for appellant.

*Thompson & Llewellyn, P.A.*, by: *M. Keith Blythe*, for appellee.

MELVIN MAYFIELD, Judge. This is an appeal from an order of the probate court of Sebastian County admitting a lost will of I.D. Gilbert to probate. I.D. Gilbert died on August 6, 1992, survived by his third wife, Mary Gilbert, and his sons, John Gilbert and David Gilbert.

On January 19, 1993, appellant John Gilbert filed a petition for appointment of administrator alleging I.D. Gilbert had died intestate and nominating himself for appointment as administrator of the estate. On February 4, 1993, the chancellor entered an order granting the petition.

On March 8, 1993, appellee David Gilbert filed a petition asking that "a certain written instrument be admitted to probate as the Last Will of the decedent, and for the appointment of a personal representative." On April 27, 1993, pursuant to a letter from appellee's attorney, documents which the letter designated as "the last will and testament (page one) and proof of will of Ira D. Gilbert" were filed with the court. "Page One" contained dispositive provisions of the alleged will which left Mr. Gilbert's estate to his wife or if she were not living everything was to go to his son David L. Gilbert (the appellee). The *last item* of "Page One" appointed Fannie E. Gilbert as Executrix of the will. There was no "Page Two."

After a hearing held May 10, 1993, the chancellor entered an order admitting the alleged will to probate as I.D.'s last will, appointing David Gilbert executor, and removing John Gilbert as administrator of the estate.

On June 4, 1993, appellant filed a motion to amend the judgment asking that the document offered as the last will and testament not be admitted to probate and that he be allowed to continue as personal representative of I.D.'s estate. In a letter to counsel filed June 17, 1993, the chancellor denied the motion stating:

> I have carefully considered your Motion for Amendment of Judgment with attached brief and after having carefully considered it and Mr. Blythe's response, as well as my own research, I am not persuaded to amend my judgment or to grant a new trial.

> Although I would agree that there was little evidence that the physical will was seen to be in existence after the testator's death, the court is convinced that the deceased did not revoke or cancel his will.

At the hearing on appellee's petition, John Beasley, an attor-

ney, testified that in the middle of 1992 he received a call to assist Mr. I.D. Gilbert, who was in Sparks Hospital, in the preparation of a will; that the appellee asked him to come to the hospital to talk to I.D.; that he talked with I.D. about some ideas he had in mind for a will; and did not see a previous will or know one was in existence. Beasley testified they discussed I.D.'s estate and he is certain I.D. knew why Beasley was there. He said he drafted a will but was not able to confirm it with I.D.

Bill Walters, an attorney, testified that after I.D. died, he searched his files and found a copy of a will he prepared for him. Walters testified there were two front pages and the Proof of Will. He explained that had the first page not been inadvertently copied twice, they would have a copy of the first page, the second page, and the Proof of Will. He testified, however, that the first page of the will contained all the dispositive provisions of the will and that he has never made a will that had any dispositive provisions after the appointment of the executor which is always the very last paragraph. He said that what would have followed would be the appointment of an alternative executor, the witnessing clause, the signature, and the provision for the witnesses. Walters testified further that the proof of will page contained the notarized signatures of three witnesses; that two of the witnesses "are here"; that he has no doubt that they signed the will as witnesses and signed the Proof of Will; and that there is no question that "this will was executed and the people witnessing it signed the Proof of Will at the same time that it was executed." He said, "we've done it a thousand times, and we do it exactly the same every time."

Martha Milam and Katherine Henry identified their signatures on the proof of will and testified they had no reason to believe that they did not sign it or that I.D. did not sign his will.

Appellee David Gilbert testified that he had seen the will after it was executed in 1972 and again in 1983 after his mother's death. He testified that after she died, he and I.D. went through a safe appellee had bought her and the will was among the documents. Appellee testified that in January 1992 I.D. called the house and asked him whether he had seen two certificates of deposit that he kept in the safe and said that he could not find either the certificates or the will that he had kept in the safe. I.D.

was unable to locate the certificates, went to the bank and reported them as lost or stolen, had new certificates issued, and obtained a safety deposit box at the bank. Appellee testified the safe was kept unlocked because I.D. had difficulty remembering the combination and anyone could get in and out of the safe at any time. The appellee also testified that I.D. never told him that he had found the will, that he wanted to change it, or that he had destroyed or revoked it.

The appellee testified further that he had contacted John Beasley to come to I.D.'s bedside and write a new will because the 1972 will was lost, misplaced, or stolen, and I.D. was of the opinion he was going to need a new one. He testified I.D. never told him that he had found his 1972 will, that he wanted to change it, or that he had revoked it. The appellee testified there was no will in the lock box after I.D.'s death; he made a diligent search of I.D.'s records for the original will; and it is nowhere to be found.

Inez Donoho, appellant's ex-wife, testified that around 1974, before she and appellant were divorced, I.D. and Fannie Gilbert told them they had made a will and showed it to them. The will stated that everything they had went to the other one, and at the death of the survivor everything left went to the appellee; that nothing was left to the appellant. She said that the will was mentioned "time and time again"; that in the summer of 1991 she visited I.D.; that he told her he wanted appellee to have everything; and that he specifically mentioned the will. She testified that in 1992, she visited I.D., and he again stated he wanted the appellee to have everything.

The appellant testified that he never knew of the existence of the will and that before I.D. died he said he was going to make out a will. Appellant also testified that about a year before I.D. died, appellant and his wife spent the night in I.D.'s home where the safe which allegedly contained the will was located.

On appeal, appellant argues the chancellor erred in finding the document proffered as the last will of the deceased had not been revoked and in admitting the will to probate.

Generally speaking, lost or destroyed wills are established by an action in chancery. Ark. Code Ann. § 28-40-301

(1987); however, Ark. Code Ann. § 28-1-104(6) (1987) grants probate court jurisdiction (concurrent with the jurisdiction of other courts) over the restoration of lost wills and for the construction of wills when incident to the administration of an estate. *See Conkle* v. *Walker*, 294 Ark. 222, 742 S.W.2d 892 (1988).

These proceedings were to restore a lost will incident to the administration of an estate; therefore, jurisdiction is proper in probate court.

Arkansas Code Annotated § 28-40-302 (1987) provides:

No will of any testator shall be allowed to be proved as a lost or destroyed will, unless the provisions are clearly and distinctly proved by at least two (2) witnesses, a correct copy or draft being deemed equivalent to one (1) witness, and:

(1) The will is proved to have been in existence at the time of the death of the testator; or

(2) The will is shown to have been fraudulently destroyed in the lifetime of the testator.

In this case appellant does not question that in 1972 his father made a will which was appropriately executed. He argues only that the will was not found in his father's possession at the time of his death and that there is no proof it was fraudulently destroyed during his father's lifetime.

██ It will be presumed that a testator destroyed a will, executed by him in his lifetime, with the intention of revoking the will, if he retained custody of the will or had access to it and if it could not be found after his death; however, this presumption may be overcome by proof. *Rose* v. *Hunnicutt*, 166 Ark. 134, 265 S.W. 651 (1924). The burden was on the appellee to prove by a preponderance of the evidence that the decedent did not revoke the will during his lifetime. *Thomas* v. *Thomas*, 30 Ark. App. 152 (1990), 784 S.W.2d 173 (1990). But it is not necessary for a trial judge to determine what became of the decedent's will; it is enough that the judge found it was not revoked or canceled by the decedent. *Thomas, supra.*

██ Here the evidence shows that I.D. Gilbert made the

will in question in 1972; that several people saw the will; that it was kept in an unlocked safe to which the appellant and others had access; that in 1992 I.D. told the appellee that he could not find the will or some certificates of deposit which were kept in the same safe; that I.D. reported the certificates to the bank as lost or stolen and had them reissued; and that I.D. then rented a safe deposit box. The appellee testified I.D. never told him that I.D. found his 1972 will, that he wanted to change it, or that he revoked it. There was also evidence that in 1991 I.D. mentioned the will and told Ms. Donoho he wanted appellee to have everything and that I.D. reiterated that intent shortly before his death.

Probate cases are tried de novo on appeal, and this court does not reverse the findings of the probate judge unless they are clearly erroneous, giving due deference to his superior position to determine the credibility of the witnesses and the weight to be accorded their testimony. *In The Matter of the Estate of Davidson*, 310 Ark. 639, 642, 839 S.W.2d 214, 216 (1992); *Thomas supra.*

In his letter to counsel, the chancellor stated he was convinced I.D. did not revoke or cancel the will, and under the evidence, we cannot say the chancellor was clearly erroneous, in finding that the document proffered as the will of I.D. Gilbert had not been revoked and in admitting it to probate.

Affirmed.

JENNINGS, C.J., and PITTMAN, J., agree.