Bellinda BARRERA *v.* Annette VANPELT

97–801 965 S.W.2d 780

Supreme Court of Arkansas
Opinion delivered April 9, 1998

*Brown, Schwander, & Greene, P.L.C.*, by: *Alice Ward Greene*, for appellant.

*Claibourne W. Patty, Jr.,* for appellee.

Tom Glaze, Justice. This is a will contest case involving William Yuhola Laneer's 1973 will, which disinherited his son, William Richard Laneer, by giving him one dollar and giving the balance of his estate, equally, to his four daughters, Bellinda Barrera, Annette Vanpelt, Ramona Desich, and Joan Edens. After William Y. died in 1996, Vanpelt petitioned to probate the 1973 will and requested she be appointed executrix. Barrera then petitioned to contest the 1973 will alleging, among other things, that the will was executed through fraud and undue influence and that William Y. had expressed no preference of any one of his children over another. Vanpelt, Desich, and Edens filed a motion to dismiss, asserting Barrera had no standing under Ark. Code Ann. § 28-40-113(a) (1987) to contest the will because her pecuniary share would be less, not more, if the will was set aside. Barrera responded, stating she had standing as an interested party to contest the will under § 28-1-102(a)(11) (1987).

At trial, the parties developed two primary issues, (1) whether Barrera had standing to challenge William Y.'s 1973 will, and (2) if so, whether Barrera had shown that William Y. had revoked the will, leaving his estate to be distributed to his five children by the laws of descent and distribution. Although the trial court found Barrera had standing to contest the 1973 will, it rejected her claim that the will had been revoked or destroyed. Upon finding William Y.'s will valid, the trial court admitted the will to probate and appointed Vanpelt to serve as executrix.

Barrera appeals, challenging the trial court's findings made in support of its ruling that the will is valid. Vanpelt cross appeals, arguing the trial court erred in finding Barrera had standing to challenge the will's validity. We first consider the standing issue.

██ ██ Vanpelt characterizes the issue of standing as one of first impression in Arkansas; if it is, it is an easy one to decide.[1] As

---

[1] We note that, in *Spicer v. Estate of Spicer,* 55 Ark. App. 267, 935 S.W.2d 576 (1996), our court of appeals considered § 28-1-102(a)(11) (1987) and held that, because appellant was a beneficiary of the trust and a second codicil affected his beneficial interest, he had standing as an "interested person."

the trial court stated in its order, § 28-40-113(a) establishes who may contest a will, and the manner in which it is done. That provision provides that an "interested person" may contest the probate of a will, or any part thereof, by stating in writing the grounds of his objection and filing them in the court. Section 28-1-102(a)(11) defines "interested persons" to include any heir, devisee, spouse, creditor, or any other having a property right, interest in, or claim against the estate being administered and a fiduciary. A devisee is further defined to include a legatee — a person entitled by will to personal property. Ark. Code Ann. §§ 28-1-102(a)(6) and (14). Here, Barrera (and all of her sisters) was given an equal share of her father's (William Y.'s) estate, so she unquestionably meets the term "interested person" as defined by law. In addition, if William Y.'s will were set aside for some reason, Barrera also would qualify along with her siblings as an "heir" within that statutory-defined term.

█ █ Vanpelt cites several secondary authorities for the proposition that before a person can contest a will, the contestant must have some pecuniary or beneficial interest in the estate of the decedent that is detrimentally affected by the will. *See* 80 AM.JUR.2d, *Wills*, § 892 (1975). She further argues that, the mere circumstance that a person may be interested in the administration, distribution, or partition of an estate is not sufficient if he will not suffer any detriment from the will. *Id.*, *see also* 95 C.J.S. *Wills*, § 329 (1957); cf. 39 A.L.R.3d 321. As set out and discussed above, our statutes, §§ 28-1-102(a)(11) and 28-40-113(a), very clearly permit devisees and legatees, having an interest in the estate, the right to contest a will, and nothing in those provisions requires that the contestant's interest must be detrimentally affected by the will. The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *See Dunklin v. Ramsey*, 328 Ark. 263, 944 S.W.2d 76 (1997). Accordingly, we hold Barrera had standing to question the validity of William Y.'s will.

We now turn to Barrera's argument that William Y.'s 1973 will was revoked and should be set aside. A short discussion of the events surrounding the execution of the will is needed. Attorney

Hubert Alexander prepared the will in 1973. At that time, William Y. and his wife harbored bad feelings toward their son, William R., who at his father's urging, had been made a partner in William Y.'s lumber business. Sometime after being made a partner, William R. believed money was missing from the business, and he determined the money went into an account bearing his mother's and Vanpelt's names. He sued the company for an accounting. He also reported the company to the Internal Revenue Service. These ill feelings resulted in William Y. and his wife going to Alexander, who advised them that, in order to preclude William R. from inheriting their estate, they would need to name William R. in their mutual wills in order to prevent him from receiving an intestate share upon their deaths. Identical wills subsequently were prepared for William Y. and his wife, giving a one dollar amount to William R. and the remainder of the estate to his four sisters. Mrs. Laneer predeceased William Y., making William Y.'s will the one at issue in this case.

It is significant to mention that William Y. actually had executed three original wills, as all three wills had been properly witnessed. One will was on paper captioned "Last Will and Testament" — this will and a second original executed copy were given to William Y. A third copy, properly executed and witnessed, was retained by Alexander. A photocopy of the original will was given to Vanpelt. After William Y. died, no one could find the will executed on will paper amongst his possessions; however, a copy of one of the three original wills was found in his lockbox after his death. This copy of the original and Alexander's executed and duly attested original copy were introduced for admission to probate by Vanpelt.

After the parties submitted their evidence and testimony, the trial court found that any one of the three original wills could suffice as the original will. It further concluded that, even though the two original wills previously given William Y. were missing at the time of William Y.'s death, causing a rebuttable presumption to arise that William Y. had destroyed his 1973 will, the court found that Vanpelt's proof had overcome any presumption of revocation.

 The trial court's decision correctly acknowledged the general rule that it will be presumed that a testator destroyed a will, executed by him in his lifetime, with the intention of revoking the will, if he retained custody of the will or had access to it, and if it could not be found after his death. *Rose v. Hunnicutt*, 166 Ark. 134, 265 S.W.2d 651 (1924); *see also Gilbert v. Gilbert*, 47 Ark. App. 37, 883 S.W.2d 859 (1994). This presumption, however, may be overcome by proof. *Id.* The proponent of the will has the burden of proving by a preponderance of the evidence that the decedent did not revoke the will during his lifetime. *Garrett v. Butler*, 229 Ark. 653, 317 S.W.2d 283 (1958); *see also Thomas v. Thomas*, 30 Ark. App. 152, 784 S.W.2d 173 (1990). This court in its de novo review on appeal will not reverse the findings of the probate judge unless they are clearly erroneous, giving due deference to his or her superior position to determine the credibility of witnesses and the weight to be accorded their testimony. *Baerlocker v. Highsmith*, 292 Ark. 373, 730 S.W.2d 237 (1987). In the present case, two of William Y.'s original wills had been given William Y for him to retain, but neither of the two wills could be found after his death. Under these circumstances and our case law, the trial court was correct in presuming William Y. had revoked his will before he died. Thus, the critical issue is whether the probate judge was clearly erroneous in concluding Vanpelt, as the proponent of William Y.'s will, offered sufficient evidence to overcome any presumption that William Y. had revoked his will. We hold the record supports the judge's decision.

The respective parties offered circumstantial but conflicting evidence on the revocation issue. For example, Barrera testified that William Y. had expressed on various occasions that all five of his children should be treated equally, and that, on one occasion after execution of their wills in 1973, both William Y. and his wife gave each of the five children a gift of $5,000.00. Barrera also related that, after his wife's death, William Y. said that he had five children and now his assets would be divided among the five children. Barrera's husband testified to the same effect, namely, that William Y. wanted all of his children to share equally in his estate. William R.'s testimony corroborated the Barreras', plus he added that his relationship with William Y. had changed for the better "sometime in the 1970's around his parents' 50th wedding anniversary." And finally, Arlina Jefferson, William Y.'s caretaker dur-

ing his final months, testifed that, although William Y. had never mentioned a will, he had told Jefferson that he wanted all his children treated equally.

The probate judge was provided with contrary evidence to that presented by Barrera, which, if believed, showed William Y. had never revoked his 1973 will. In this respect, we first note that, while William Y. and his wife executed mutual wills in 1973, no direct evidence was offered at the hearing of the probate of William Y.'s will that showed he had actually revoked his will or had said he had revoked or destroyed his will. In fact, even though Barrera and William R. both testified that William Y. had denied ever having executed a will like his wife's (disinheriting William R.), considerable evidence was presented showing they had executed identical wills. It is further undisputed that, as mentioned earlier, a copy of William Y.'s 1973 will was found in his lockbox after he died. This court has held that a photocopy of a properly executed and attested will can be probated in place of a lost or destroyed will. *See Tucker v. Stacy*, 272 Ark. 475, 616 S.W.2d 473 (1981). In the present case, William Y. not only had an original copy of his 1973 will in his lockbox, but also he knew his attorney Hubert Alexander had retained the third original will. Nonetheless, no evidence was offered showing William Y. had made any effort to revoke or destroy the will retained by Alexander. Nor was any evidence introduced reflecting William Y. had made any attempt to destroy the copies of his will previously given to his daughters.

The foregoing evidence, plus testimony establishing that William Y. and his wife bore and retained ill feelings towards William R. for suing the family business and reporting it to the IRS, is sufficient to support the probate judge's decision to probate William Y.'s will. From this evidence, we believe the judge could reasonably conclude, as he did, that, if William Y. had intended for all of his children to receive equal shares, he had from 1973 to his death to prepare another will, and that, other than the fact that two of William Y.'s three original wills were missing, the evidence preponderated in showing William Y. had not revoked his will.

Affirmed.