# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-3395

_____

John Kennedy,                           *
                                        *
          Plaintiff-Appellant,          *
                                        *    Appeal from the United States
     v.                                 *    District Court for the
                                        *    Eastern District of Arkansas.
Gibbs Ferguson,                         *
                                        *
          Defendant-Appellee.           *

_____

Submitted: April 20, 2012
Filed: June 4, 2012

_____

Before MURPHY, MELLOY, and GRUENDER, Circuit Judges.

_____

MELLOY, Circuit Judge.

John Kennedy sued attorney Gibbs Ferguson in federal district court asserting diversity jurisdiction and alleging malpractice and constructive fraud related to Ferguson's handling of Kennedy's father's estate. The district court[1] found the matter not yet ripe because the estate was still open, no final distribution of the estate had yet taken place, and Kennedy could still assert his rights in probate. We affirm the judgment of the district court.

_____

[1]The Honorable Billy Roy Wilson, United States District Judge for the Eastern District of Arkansas.

Ferguson drafted a will that Kennedy's father, Eugene, executed in 2000. Ferguson retained the original copy of the 2000 will in his law office. Ferguson then drafted another will that Eugene purportedly executed in 2008. The 2008 will expressly revoked all prior wills, and Eugene personally retained the original version of the 2008 will. The 2000 will included a specific bequest to Kennedy in the form of a $30,000 educational fund. The 2008 will included a specific bequest to Kennedy of $1,000.

Eugene passed away in 2010, and Ferguson opened a probate estate filing the 2000 will in probate court. Ferguson also filed a verified petition swearing that the 2000 will was the "Last" will of Eugene Kennedy. The original version of the 2008 will was never located.

In 2011, Ferguson notified Kennedy's attorneys about the existence of the 2008 will and provided them with a copy of it. Kennedy would have received substantially more from Eugene's estate pursuant to the Arkansas laws of intestacy than pursuant to either will. Kennedy argues the copy of the 2008 will could have proven revocation of the 2000 will, but would not, itself, have been admissible to control the disposition of his father's estate. According to Kennedy, Ferguson's actions deprived Kennedy of the benefit of a share of the estate pursuant to the intestacy laws of Arkansas. Kennedy also argues that Ferguson's actions forced Kennedy to hire an attorney and incur expenses related to asserting his interests and that Kennedy would not have incurred these expenses had Ferguson handled probate differently.

Kennedy did not inject himself into the probate proceedings or mount a legal challenge in those proceedings to press his views. Instead, Kennedy worked out a settlement with Eugene's other heirs for $1.6 million and agreed, pursuant to the terms of that settlement, not to challenge the 2000 will. After entering into the

settlement agreement, however, Kennedy elected to bring the present diversity action against Ferguson alleging constructive fraud and attorney malpractice. As of the time of the district court proceedings in this matter, the estate remained open and no final distribution had taken place.

Ferguson filed a motion to dismiss. The district court noted that procedures existed pursuant to Arkansas law to permit Kennedy to challenge the 2000 will in the probate proceedings. Ultimately, the district court concluded that, because the estate remained open and no final distribution had occurred, Kennedy could still raise a claim in those proceedings and, therefore, had not yet been injured. As a result, the court concluded the federal action by Kennedy alleging malfeasance by Ferguson was not yet ripe, and the court dismissed the complained without prejudice. The court, however, noted the "Catch 22" situation that Kennedy had created for himself through his chosen courses of action: the settlement agreement would not allow Kennedy to mount a challenge in probate court without jeopardizing his substantial settlement with the other heirs, but in the district court's view, the technical availability of such an option meant the federal action was not ripe.

## II.

"Standing and ripeness are sometimes closely related. In assessing ripeness, we focus on whether the case involves 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" Missouri Roundtable for Life v. Carnahan, 676 F.3d. 665, 674 (8th Cir. 2012) (quoting 281 Care Committee v. Arneson, 638 F.3d 621, 631 (8th Cir. 2011), other citation omitted). Both are requirements for Article III subject matter jurisdiction, and we review de novo the district court's dismissal of an action for lack of jurisdiction. Care Committee, 638 F.3d at 627.

-3-

Kennedy asserts two arguments to contest the district court's ripeness determination. First, he argues Arkansas law does not permit him to challenge the 2000 will in the probate proceedings because: (1) most types of legal challenges to a will must be brought within "three months . . . after the date of the first publication of the notice of the admission of the will to probate," Ark. Code Ann. § 28-40-113(b)(2)(B), and those three months have passed; and (2) although challenges based upon the discovery of "another will of the decedent" generally may be brought at any time prior to final distribution of the estate, Ark. Code Ann. § 28-40-113(b)(1), Kennedy asserts a mere copy of a will is insufficient to trigger the longer limitations period. Second, he argues that regardless of how the probate proceedings end and regardless of whether he could still raise issues in the probate proceedings, he has been injured simply by virtue of the fact that he was forced to spend more time and resources on things such as attorney fees in an effort to secure a greater share of the estate.

Regarding the first argument, we believe Arkansas law would allow Kennedy to challenge the validity of the 2000 will using a mere copy of the 2008 will and that such a challenge is not time barred. A mere copy of the 2008 will would be insufficient to control the ultimate distribution of Eugene's estate and could not be successfully entered into probate for that purpose. See Ark. Code Ann. § 28-40-302(2)(A) (requiring proof that a will was still "in existence at the time of the death of the testator" and stating that a copy, standing alone, provides insufficient proof). The reasons that the mere copy would be insufficient for that specific purpose, however, do not suggest that reliance upon the copy would be prohibited for the separate purpose of establishing the revocation of a prior will.

In Arkansas, a testator may revoke a will through execution of a subsequent will or by physically destroying it. See Remington v. Roberson, 98 S.W.3d 44, 46–47 (Ark. Ct. App. 2003); Garrett v. Butler, 317 S.W.2d 283, 284–85 (Ark. 1958). In the absence of an original version of a will—when all that is available is a copy—it is

-4-

presumed that the testator physically destroyed the original with the intent to revoke it. Remington, 98 S.W.3d at 46–47. A copy of a will may be entered into probate for the purpose of controlling the ultimate distribution of an estate, but only if it is accompanied by sufficient additional evidence to prove that the testator did not, in fact, destroy the original version of the will reflected in the copy. Id.; see also Ark. Code Ann. § 28-40-302(2). There is no allegation in the present case that any evidence exists to rebut the presumption that Eugene Kennedy physically destroyed the missing original version of the 2008 will. Accordingly, it would appear that Kennedy is correct to the limited extent that he argues the 2008 cannot be admitted into probate for the purpose of controlling the ultimate disposition of Eugene's estate.

The purpose of requiring an original version of a will rather than a copy is to ensure that the testator did not, subsequent to execution of the will, express a different testamentary intent by taking the affirmative action of physically destroying the original version of the will—continued existence of an original version generally is necessary to prove revocation by destruction has not taken place. See Garrett, 317 S.W.2d at 284. This purpose relates to the proof of events that occur *after* execution of the will. And, as just stated, in the absence of an original version, purposeful and affirmative destruction is presumed.

We find no authority suggesting that this purpose for requiring an original version rather than a copy is somehow related to the inherent inability or infirmity of a copy to prove the original and earlier fact of execution—the fact of legal consequence in this case.[2] Whether the 2008 will continued to represent Eugene's ongoing and final testamentary intent after he executed the 2008 will is relevant to

---

[2]We make no comment regarding the rules of evidence that may apply in Arkansas state court and the general treatment of copies in lieu of originals as to all documents offered as proof in all contexts in state court. The parties have neither raised nor briefed any such issues. We constrain our analysis to the Arkansas cases involving the issues expressly discussed herein.

determining whether his estate should be distributed pursuant to an intestacy scheme or pursuant to the 2008 will. Legal consequences flowing from events that occurred after execution of the 2008 will, however, are immaterial for the purpose of proving that Eugene expressly revoked the 2000 will at a particular moment in time by executing the 2008 will. That act would have been final immediately upon execution of the 2008 will regardless of whether Eugene subsequently destroyed the latter will.

Based on the foregoing, and in the absence of any controlling state authority to the contrary, we hold that the longer limitations period applicable to challenges based upon the discovery of "another will of the decedent" as set forth in Ark. Code Ann. § 28-40-113(b)(1) applies, even if the challenge is supported by a mere copy of the new will. Because Kennedy may still raise his challenge in probate, it is not known whether he has suffered a cognizable injury and his claim, therefore, is not yet ripe.

Regarding Kennedy's second argument, we find no cognizable injury in the litigation-related costs Kennedy elected to incur to pursue legal remedies. In this respect, Kennedy is no different than any party in any case who believes his or her legal rights have been violated by another. While such expenses in many cases may be compensable at the end of all proceedings for any number of reasons recognized by statute or common law, such expenses are not injuries for purposes of assessing the presence of Article III standing. See Diamond v. Charles, 476 U.S. 54, 70–71 (1986) ("[A]n injury that is only a byproduct of the suit itself does not mean that the injury is cognizable under Art. III."); Proskauer Rose, LLP v. Blix Street Records, Inc., 384 F. App'x 622, 624 (9th Cir. 2010) ("Nor does the fact of Straw's personal liability to Proskauer for fees create standing to assert a malpractice claim."); W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche, LLP, 549 F.3d 100, 109 (2d Cir. 2008) ("[T]he recovery of its legal fees, which are a byproduct of the suit itself . . . cannot serve as a basis for Article III standing."); Fair Hous. Council of Suburban Philadephia v. Montgomery Newspapers, 141 F.3d 71, 78–79 (3d Cir. 1998) (stating

in the context of an analysis of whether an advocacy organization enjoyed Article III standing, "litigation expenses alone do not constitute damage sufficient to support standing");  Spann v. Colonial Village, Inc., 899 F.2d 24, 27 (D.C. Cir. 1990) ("An organization cannot, of course, manufacture the injury necessary to maintain a suit from its expenditure of resources on that very suit.  Were the rule otherwise, any litigant could create injury in fact by bringing a case, and Article III would present no real limitation.").  To hold otherwise would create an exception that swallows the rule—any parties who at any time who believed themselves to be injured could claim constitutional standing based solely on the expense of filing suit or even the expense of the pre-suit act of consulting with an attorney.  Pursuant to the American Rule generally applicable to our nation's pay-your-own-way adversarial system of justice, such impositions upon parties' time and treasure are not independently cognizable injuries.

We affirm the judgment of the district court dismissing Kennedy's complaint without prejudice.

_____