Cite as 2026 Ark. App. 221

# ARKANSAS COURT OF APPEALS
## DIVISIONS IV & I
### No. CV-24-590

| | |
|---|---|
| JULIUS WILLIAMS<br><br>APPELLANT<br><br>V.<br><br>CARSON BRIDGES, JR.<br><br>APPELLEE | Opinion Delivered April 8, 2026<br><br>APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT<br>[NO. 35PR-19-313]<br><br>HONORABLE MAC NORTON, JUDGE<br><br>AFFIRMED |

**STEPHANIE POTTER BARRETT, Judge**

The appellant, Julius Williams ("Julius"), appeals from the April 2, 2024 order of the Jefferson County Circuit Court admitting a copy of a lost or destroyed will to probate and appointing an executor of the estate as well as the July 31, 2024 order denying his motion for reconsideration. On appeal, Julius argues that the circuit court erred in admitting a copy of a will to probate because the presumption of revocation was not rebutted and in denying his motion for reconsideration. We affirm.

Carson Bridges, Sr. ("Carson Sr."), fathered three children: Carson Jr., Julius, and Alexis. In 1995, Carson Sr. executed a will that left nothing to Julius, one dollar to Alexis, and the remainder of his estate to Carson Jr. After marrying Bobbie Bridges ("Bobbie") in 2000, he executed a second will in May 2017 that provided $50,000 and a life estate in the

marital home to Bobbie; $5,000 to Julius; $10,000 to Alexis; and the remainder of the estate to Carson Jr. He also executed a power of attorney naming Carson Jr. as his agent.

In 2018 or 2019, Carson Sr. was diagnosed with Alzheimer's disease.[1] In July 2019, Bobbie petitioned for guardianship over Carson Sr., and in January 2020, the circuit court entered an order appointing Bobbie as guardian of his person and estate. Carson Sr. thereafter resided in a nursing home until his death in January 2023.

Following his death, proceedings were initiated to convert the guardianship to an estate administration. During those proceedings, it was established that although a copy of the 2017 will existed, the original could not be located. Julius filed a petition requesting that the estate be administered intestate, asserting that because the original 2017 will could not be found, it was presumed revoked. The circuit court set the matter for a hearing to determine whether any will should be admitted to probate. At the February 28, 2024 hearing, the parties presented evidence regarding the existence of the 2017 will and the circumstances surrounding the absence of the original.

Carson Jr. testified that the 1995 will was on file at the courthouse, and he received a copy of the 2017 will after its execution. He stated that, to his knowledge, Carson Sr. did not execute another will after 2017, and both the 1995 and 2017 wills contained provisions for his siblings. Carson Jr. testified that Carson Sr. told him that the purpose of the 2017 will was to ensure that Bobbie was taken care of.

---

[1]The guardianship order states that the decedent was diagnosed with Alzheimer's disease; however, the circuit court and the testimony characterize the condition as dementia.

Carson Jr. testified that after the execution of the 2017 will, he accompanied Carson Sr. to retrieve it from the attorney's office and later to a bank, where his father accessed a safe deposit box. Carson Sr. subsequently gave Carson Jr. a copy of the will. Carson Jr. did not see the original will and believed it remained in the safe deposit box until his father's death.

Carson Jr. explained that Carson Sr. kept important documents in multiple locations, including a safe deposit box, a box in the attic of his house, and a box in his closet. He stated that, after his father's death, he searched the safe deposit box with Bobbie and located the power of attorney but not the original 2017 will. Carson Jr. stated that when they did not locate the will, he asked Bobbie about checking the attic for the will, and she informed him that she had someone clean out the attic, and everything in it had been thrown away. Carson Jr. further testified that only he and Carson Sr. had access to the safe deposit box. He stated that Bobbie and her children had access to the house, but he did not because the locks to the house had been changed. He did have access to Carson Sr.'s home the day after the funeral in January 2023, but he did not search those areas.

Carson Jr., who lived in Texas, testified that he maintained regular contact with his father through frequent phone calls and visits. He described Carson Sr. as a private person who shared limited information about his affairs with certain individuals. After execution of the 2017 will, Carson Sr. never mentioned to him that he may want to make changes to the will, revoke the will, or make another will.

Bobbie testified that she was unaware of the existence of either will until after Carson Sr.'s passing in 2023. She stated that Carson Sr. never mentioned that he stored documents in the attic and that the attic had been cleaned out at some point. Bobbie stated that as the surviving spouse, she would elect to take against the will if either will was admitted to probate.

On April 2, 2024, the circuit court entered an order admitting a copy of the 2017 will to probate as a lost or destroyed will pursuant to Arkansas Code Annotated section 28-40-302 (Repl. 2012) and appointing Carson Jr. as the executor of the estate. Julius filed a motion for reconsideration, which the circuit court later denied.

Probate cases are reviewed de novo, but this court will not reverse the circuit court's findings of fact unless they are clearly erroneous. *See Whatley v. Est. of McDougal*, 2013 Ark. App. 709, at 4, 430 S.W.3d 875, 878. A finding is clearly erroneous when, although there is evidence to support it, this court is left on the entire evidence with the firm conviction that a mistake has been made. *Id.* at 4–5, 430 S.W.3d at 878. Due deference is given to the superior position of the circuit court to determine the credibility of the witnesses and the weight to be accorded their testimony. *Id.*

Julius argues the circuit court erred in admitting a copy of the 2017 will to probate because the presumption that the 2017 will was revoked was not rebutted.

Arkansas Code Annotated section 28-40-302 states that no will of any testator shall be allowed to be proved as a lost or destroyed will unless

(1) The provisions are clearly and distinctly proved by at least two (2) witnesses, a correct copy or draft being deemed equivalent to one (1) witness; and

(2) The will is:

(A) Proved to have been in existence at the time of the death of the testator; or

(B) Shown to have been fraudulently destroyed in the lifetime of the testator.

Under this statute, the proponent of a lost will must prove (1) the execution of the will and its contents by strong, cogent, and convincing evidence; and (2) that the will remained in existence at the time of the testator's death or was fraudulently destroyed during the testator's lifetime. *See Whatley*, 2013 Ark. App. 709, at 3–4, 430 S.W.3d at 878 (citing *Abdin v. Abdin*, 94 Ark. App. 12, 223 S.W.3d 60 (2006)); *Griffith v. Griffith*, 2018 Ark. App. 122, at 9, 545 S.W.3d 212, 217. The first prong regarding execution and contents is not an issue on appeal.

The second element is required because the law presumes that an original will that cannot be found after a testator's death has been revoked. *See Whatley*, 2013 Ark. App. 709, at 4, 430 S.W.3d at 878 (citing *Abdin v. Abdin*, 94 Ark. App. 12, 223 S.W.3d 60 (2006)).

This presumption arises from the failure to produce the original will but may be overcome if the proponent of the lost will proves by a preponderance of the evidence that the will was not revoked during the testator's lifetime. *See id.*

It is presumed that a testator destroyed a will in his or her lifetime, with intention of revocation, when a testator retained custody of a will or had access to it, and it could not be

found after the testator's death. *See id.* However, Arkansas courts have recognized that the presumption of a will revocation may be rebutted by circumstantial evidence. *See Garrett v. Butler*, 229 Ark. 653, at 657, 317 S.W.2d 283, 285 (1958).

Here, the circuit court found that the presumption of revocation had been rebutted, and the will was in existence when Carson Sr. died. In concluding that the presumption was rebutted, the circuit court relied on Carson Sr.'s failure to inform anyone that he revoked the 2017 will or executed a new one, that his attic-stored documents were discarded by his wife after he was placed in a nursing home, and the fact that he had dementia.

In *Whatley*, a testator's brother sought to probate a copy of a 2007 will after the original could not be located, and the testator's son objected, asserting that the testator had intentionally destroyed it before her death. 2013 Ark. App. 709, 430 S.W.3d 875. Testimony established that the testator had a strong-willed personality, a strained relationship with her son, and an intent to exclude him from her will. *Id.* This court affirmed the circuit court's finding that the will was in existence at the time of the testator's death and held that the copy was properly admitted to probate because the testimony and attending circumstances rebutted the presumption that the original will had been revoked or destroyed. *Id.*

Julius contends that *Whatley* is distinguishable because the evidence in that case more clearly rebutted the presumption of revocation. *Id.* However, the absence of identical proof does not render the case inapplicable. As in *Whatley*, the surrounding circumstances—Carson Sr.'s cognitive decline, his confinement to a nursing home, and the cleaning out of the attic—undermine an inference of an intentional revocation or destruction of the will. *See*

6

*id.* These circumstances, taken together, support the circuit court's determination that the absence of the original will did not result from intentional revocation.

Julius also relies on *Remington v. Roberson*, 81 Ark. App. 36, 40, 98 S.W.3d 44, 47 (2003), in which this court explained that the absence of direct evidence that a will was destroyed cannot rebut the presumption. However, this case does not rest on the mere absence of such evidence. Rather, the circuit court relied on affirmative circumstantial evidence that the will was lost or misplaced rather than intentionally revoked. Thus, unlike the facts in *Remington*, the circuit court's finding was supported by evidence rebutting the presumption. *See id.* at 40–42, 98 S.W.3d at 47–48.

This conclusion is further supported by *Tucker v. Stacy*, 272 Ark. 475, 616 S.W.2d 473 (1981), where the Arkansas Supreme Court affirmed a finding that a testator's will had been either lost or accidentally destroyed rather than revoked. In *Tucker*, the court emphasized that, after executing the will, the testator became increasingly forgetful and was later declared incompetent, a guardian was appointed to take care of her affairs, and she was confined to a nursing home without access to her personal belongings during the final months of her life. *Id.* at 479–80, 616 S.W.2d at 475–76. Those circumstances supported the conclusion that the will had not been intentionally revoked. *See id.*

The present case is much more akin to *Tucker*, *supra*; Carson Sr. was diagnosed with late-onset Alzheimer's, placed under a guardianship, declared incapacitated, and resided in a nursing home at his death. The record contains no evidence that he returned home or otherwise exercised control over his personal effects during this period. The record further

7

reveals that after the execution of the will, his wife cleared out the attic of their residence, possibly destroying the will inadvertently. These circumstances support an inference that the will was not intentionally revoked but instead lost or misplaced during a period of Carson Sr.'s cognitive decline and institutional confinement. *Id.* Moreover, a decedent's confinement to a nursing home and deteriorating physical condition is a proper consideration for determining whether the presumption of revocation is rebutted and weighs against a finding of intentional revocation. *See id.*; *Remington*, 81 Ark. App. 36, at 41, 98 S.W.3d at 48.

In *Garrett*, a testator died without a spouse or children, and the original will could not be found after his death. 229 Ark. 653, 317 S.W.2d 283. The evidence showed that he had previously sent the will for safekeeping to his nephew, who later returned it to him at his request, with no indication he intended to revoke or change it before his death. *Id.* at 654–55, 317 S.W.2d at 284. After his death, only the envelope that the will was returned in was found, not the will itself. *Id.* at 655–56, 317 S.W.2d at 284. Witnesses testified about his continued intent and surrounding circumstances, and no contrary testimony was offered. *Id.* The court held that the evidence sufficiently rebutted the presumption of revocation, emphasizing the absence of any intent to revoke and the fact that multiple individuals had access to his papers during his final days. *Id.* at 656–58, 317 S.W.2d at 284–285. The Arkansas Supreme Court therefore affirmed. *Id.* at 658, 317 S.W.2d at 285.

Here, as in *Garrett*, the record contains no evidence that Carson Sr. ever expressed an intent to revoke or change the 2017 will. *Id.* Instead, the circuit court was presented with

8

evidence concerning the surrounding circumstances of Carson Sr.'s final years and the handling of his papers. Under these circumstances, the circuit court reasonably determined that the absence of the original will was not the result of intentional revocation or destruction. When considered together, this evidence supports the circuit court's finding that the 2017 will had not been revoked.

Under the clearly erroneous standard of review, we defer to the circuit court's evaluation of the evidence and witness credibility. *Whatley*, 2013 Ark. App. 709, at 4, 430 S.W.3d at 878. Moreover, our case law does not require any specific type of evidence to rebut the presumption of revocation, including evidence of postexecution statements or the nature of familial relationships. The presumption may be overcome through circumstantial evidence, and the absence of certain types of proof does not preclude a finding that a will was lost rather than intentionally revoked. Under these circumstances, the circuit court was not clearly erroneous in determining that the presumption was rebutted and admitting the 2017 will to probate. Accordingly, we affirm.

Julius also argues that the circuit court erred in denying his motion for reconsideration under Arkansas Rule of Civil Procedure 60. A circuit court's findings under Rule 60 are reviewed under an abuse-of-discretion standard. *Toney v. Burgess*, 2018 Ark. App. 54, at 3, 541 S.W.3d 469, 471. A circuit court may modify an order or decree within ninety days of entry to correct errors or mistakes or prevent the miscarriage of justice. Ark. R. Civ. P. 60(a).

Rule 60 provides limited grounds for relief and does not allow a party to reargue the merits of the underlying ruling. Here, Julius's motion failed to establish any basis for relief under Rule 60 and merely reargued the merits of the case. Additionally, the circuit court did not clearly err in admitting a copy of the 2017 will to probate; therefore, it did not abuse its discretion in denying the motion for reconsideration. Accordingly, we affirm.

Affirmed.

HARRISON, TUCKER, WOOD, and BROWN, JJ., agree.

KLAPPENBACH, C.J., dissents.

**N. MARK KLAPPENBACH, Chief Judge, dissenting**. Carson Bridges, Jr., as the proponent of the will, had the burden of proving by a preponderance of the evidence that Carson Bridges, Sr., did not revoke the will. I would reverse because I do not think there was sufficient evidence to find that the will had not been revoked.

While no specific type of evidence is required, evidence that has been held to be sufficient to overcome the presumption includes (1) evidence that the testator made statements after the will's execution indicating that his desires remained aligned with the provisions of the will and (2) evidence of the testator's continued poor relationship with the will's opponent. *See Barrera v. Vanpelt*, 332 Ark. 482, 965 S.W.2d 780 (1998); *Tucker v. Stacy*, 272 Ark. 475, 616 S.W.2d 473 (1981); *Garrett v. Butler*, 229 Ark. 653, 317 S.W.2d 283 (1958);*Whatley v. Est. of McDougal*, 2013 Ark. App. 709, 430 S.W.3d 875; *Gilbert v. Gilbert*, 47 Ark. App. 37, 883 S.W.2d 859 (1994). Here, there was no evidence that Carson Sr. made any subsequent statements about his desires for his estate, and there was no evidence

regarding his relationship with his other two children and whether it may have improved since the execution of the will.

The only evidence as to what became of the will was that, after its execution in May 2017, Carson Sr. told Carson Jr. that he was going to place the will and a power of attorney in a safe-deposit box to which only they would have access. Carson Jr. watched his father place papers in the safe-deposit box, and he watched him put what he believed to be copies of those documents into a box in his attic. More than two years later, Carson Sr.'s wife filed a petition for guardianship, and at some point thereafter, Carson Sr. was moved to a nursing home. After his death, the safe-deposit box contained neither the will nor a copy of the will, and the box in the attic had been discarded.

While it is possible that the will was merely lost, the law presumes that an original will that cannot be found after a testator's death had been revoked. *Abdin v. Abdin*, 94 Ark. App. 12, 223 S.W.3d 60 (2006). Carson Sr. had the time and opportunity to revoke his will, and unlike the cases relied on by the majority, there is no evidence that he could not or would not have revoked his will. Preponderance of the evidence means evidence of greater convincing force and implies an overbalancing in weight. *Edmisten v. Bull Shoals Landing*, 2014 Ark. 89, 432 S.W.3d 25. I would hold that the circuit court clearly erred in finding that Carson Jr. proved by a preponderance of the evidence that the will had not been revoked.

*Law Office of Geoffrey D. Kearney, PLLC*, by: *Geoffrey D. Kearney*, for appellant.

*Lisa-Marie Norris*, for appellee.