ROBINSON *v.* HAMMONS.

5-1346                                     307 S. W. 2d 857

Opinion delivered December 2, 1957.
[Rehearing denied January 13, 1958.]

330

*Paul K. Roberts,* for appellant.

*Clifton Bond,* for appellee. *Amici curiae; J. H. Bowen, Maurice Cathey, Edward B. Meriwether, Edward L. Wright* and *Adrian Williamson,* Members, Probate Code Committee.

PAUL WARD, Associate Justice. Bobbie Jean Robinson, Appellant, came into possession of $1,325 left by her grandfather in 1950 when she was 15 years of age. On November 7, 1950 George W. Hammons, Appellee, who was an undertaker, was appointed guardian of the person and estate of appellant.

On June 24, 1952 appellee, as guardian, filed his verified account in which he charged himself with $1,325 and took credit for various amounts, including $338.00 paid to himself for the burial of appellant's grandfa-

ther and a total of $876.08 paid out in cash and checks to appellant on several different occasions.

On October 18, 1952 appellant by her next friend, filed exceptions to the above mentioned account, claiming, among other things, that a certain receipt for $50.00 was a forgery, and that the book of receipts presented by the guardian and purportedly signed by appellant was incorrect for various reasons.

The trial court disallowed the $50.00 credit claimed by appellee, but allowed all the other claimed credits.

Appellant's contention for a reversal may conveniently be grouped under two headings: (a) The trial court was without authority to allow the credits, and; (b) The testimony did not justify the trial court in allowing the same.

(a) Did the trial court have authority to allow the credits? Appellant says the Court did not have such authority because all the expenditures were made from the *corpus* of the estate (as opposed to the income from the estate) and that no order of the Probate Court authorized the expenditures before they were made. It is pointed out by appellant (and we agree) that under the old Probate Code, Arkansas Stats. § 57-307, the credits herein allowed would have been unauthorized. This section reads:

"EXPENDITURES.—The probate court may direct a guardian to expend for the maintenance and education of his ward a specified sum, although such sum may exceed the income of the ward's estate; but, without such direction, the guardian shall not be allowed, in any case, for the maintenance and education of the ward, more than the clear income of the estate."
It is admitted that all the allowances herein made by the court and all of the expenditures made by the guardian were made from the *corpus* of the estate, and it is further admitted that such expenditures had not been authorized by a previous order of the Probate Court.

The very interesting question presented here is this: Does the new Probate Code (Act 140 of 1949) dispense

with the necessity of procuring a directory order (as was the case under said § 57-307) before a guardian can be allowed credits for advances to his ward out of the *corpus* of the estate for the ward's maintenance and education?

After a careful examination of the pertinent provisions of the 1949 Probate Code, we have concluded that the above question must be answered in the affirmative. We find that said § 57-307 was repealed by section 235 (a) of the new Probate Code. The section in the new code which appears to be an outgrowth and expansion of said section 57-307, is Ark. Stats. § 57-632, which reads, in all parts material here, as follows:

§ 57-632 . . . "The guardian of the estate . . . may apply to the court for an order directing the guardian . . . to apply a designated amount periodically as the court may direct, to be expended in the care, maintenance and education of the ward . . . In proper cases the court may order payments of amounts directly to the ward for his maintenance or incidental expenses. The amounts authorized under this section may be decreased or increased from time to time by direction of the court."

It will be noted that the strong prohibitory language contained in the former section is not brought forward in the latter section. We believe this omission is significant, and can only be interpreted as an intent by the authors of the new code not to carry the said restrictive provisions forward. The intention on the part of the authors apparently is reflected in the "Committee Comment" following said section 57-632. It reads: "The foregoing is an expansion of the somewhat limited authority provided in . . . § 57-307 . . ."

We note moreover that in § 57-633(b) "Income" and "Principal" are treated equally available to the guardian for maintenance and education. The argument is advanced that § 57-633(c) contains substantially the same restrictions found in § 57-307 above mentioned. This argument is predicated on the following language found in the last sentence of § 57-633(c) which

reads: "If the income is not sufficient to care for, maintain and educate the ward and his dependents, the court may order the expenditure of such portion of the principal as it from time to time finds necessary for such purposes." However a careful reading of sub-section (c) shows plainly the absence of the prohibitory language contained in that part of § 57-307 copied above.

Our research reveals some early cases which may seem to hold that, in the absence of any statutory regulation one way or the other, the guardian must receive a prior order before making expenditures from the *corpus* of his ward's estate. See *Villard* v. *Robert* (1838), 21 So. Car. Eq. 40, 49 Am. Dec. 654; and *Patton* v. *Thompson* (1856), 55 N. C. 411, 67 Am. Dec. 222. However a careful reading of these cases reveal that they do not deal with the *power* or *jurisdiction* of the Probate Court as we are here. In the *Villard* case, *supra,* the court said: "An expenditure made upon an emergency, suddenly arising and acted on by the guardian, might *afterwards* be sanctioned by the court, where it is proved to have been for the benefit of the ward." (Emphasis supplied.)

In the *Patton* case, *supra,* it is also doubtful if the court was dealing with the same question we are concerned with here, judging from this language: "When a guardian finds that the income of the ward's estate is not sufficient for his maintenance, it is his duty to submit the whole matter to the consideration of the court, and to act under its directions; if he proceeds otherwise, he acts upon his own responsibility."

There is also an additional reason why we refuse to follow the above cases as authority for holding that the Probate Court has no *power* or *jurisdiction* to approve an expenditure out of the *corpus* of a ward's estate without a previous order. In this state, as heretofore stated, we once had a statute which required a *previous order* but it was deliberately and expressly *repealed.* Such was not the situation facing the courts in the cases cited above.

Since the decisions in the cited cases were rendered, the courts of many states have held that a *previous order* is not necessary (in the absence of a statute like § 57-307 first copied above) to invest the Probate Court with *power* and *jurisdiction* to allow a guardian credit for expenditures out of the *corpus* of his ward's estate. See: *Kelly* v. *Kelly* (1931) 89 Mont. 229, 297 P. 470; *Re Clanton*, (1915) 171 Calif. 381, 153 P. 459; *May* v. *Skinner*, 149 Mass. 375, 21 N. E. 870; and *Re Ewing Estate*, (1941) 242 Cal. App. 2d 629, 109 P. 2d 748. For other cases, see 130 A. L. R. 117.

By way of *dictum* our own court has already indicated the conclusion we now reach in the case of *Campbell* v. *Clark*, 63 Ark. 450, 39 S. W. 262. In referring to Sand. & H. Dig. § 3604 (which is the same as § 57-307 above quoted), and after holding the statute required a *previous order*, said: . . . "the court (referring to the probate court), before the passage of this act, could approve such use by the guardian (referring to expenditures out of the *corpus* of the ward's estate) without *previous* application for leave, where the court would have authorized it if application has been made."

From the foregoing it must be concluded that the trial court did have *jurisdiction* to allow appellee, as guardian, credit for the several amounts expended. This is not to say that we approve the practice of a guardian making expenditures from the *corpus* of his ward's estate without first obtaining an order to do so. If such practice is followed by a guardian he should realize that he does so at his own risk.

From what we have said above it must be concluded that the trial court did have the *power* and *jurisdiction* to give credit to appellee, as guardian, for the amounts expended. The only remaining question is the one discussed below.

(b) Did the testimony in this case justify the trial court in allowing the credits?

The guardian paid himself $338 out of his ward's estate for the funeral expenses of appellant's grandfa-

ther. We do not condone the way this transaction was handled as standard procedure for a guardian, but the trial court was, we hold, justified in allowing credit solely because the appellant ratified it after she became of age.

As to the other expenditures, it was error for the trial court to allow the guardian credit on the showing made in this record. The only evidence in the record to justify the expenditure is the following: (1) The guardian introduced a receipt book containing 30 separate receipts (not counting one for $50 disallowed by the trial court) signed by appellant ranging in amounts from $10 to over $60; (2) Bystanders' "affidavits" to the effect that appellant testified she went by her guardian's office on her way to school each morning, and would get small amounts in cash—usually 50 cents or a dollar, that appellant signed some of the receipts in blank, that she did not receive the amounts shown in the several receipts, and that she lived with friends and paid $10 per month board, and further that she asked the court to require the guardian to make an accounting. The record shows that practically all of appellant's estate was disposed of by the guardian from November 25, 1950 to June 16, 1951, or a period of a little more than six months.

Under the above state of the record we think the trial court erred in allowing all the credits in controversy. The guardian did not meet the burden imposed on him by *Merritt* v. *Wallace,* 76 Ark. 217, 88 S. W. 876 or by Ark. Stats. § 57-624(b) which imposes upon a guardian a duty "to exercise due care to protect and preserve" the estate of his ward, and which says that, to the extent applicable, "the law of trusts shall apply to the duties and liabilities of a guardian . . ."

The cause is therefore reversed and remanded with directions to proceed further not inconsistent with the views herein set forth.

ROBINSON, J. dissents.