

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-16-639

| | |
|---|---|
| BARBARA ROGERS<br>APPELLANT/CROSS-APPELLEE | Opinion Delivered: SEPTEMBER 6, 2017 |
| | APPEAL FROM THE PULASKI<br>COUNTY CIRCUIT COURT,<br>NINTH DIVISION |
| V. | [NO. 60PR-07-1692] |
| | HONORABLE MARY SPENCER<br>MCGOWAN, JUDGE |
| FLORIDA MARTIN RITCHIE<br>APPELLEE/CROSS-APPELLANT | AFFIRMED IN PART; REVERSED<br>AND REMANDED IN PART ON<br>DIRECT APPEAL; REVERSED AND<br>REMANDED ON CROSS-APPEAL |

**ROBERT J. GLADWIN, Judge**

In this appeal, we primarily consider whether certain expenditures were permissible expenses of the guardianship of John Collins Rogers. After years of litigation, the Pulaski County Circuit Court, Ninth Division, entered an order allowing and disallowing certain expenditures and terminating the guardianship. Both Barbara Rogers as guardian of John Collins Rogers and Florida Martin Ritchie as personal representative of John Collins Rogers's estate subsequently appealed.

## I. *Background*

In 2004, the Pulaski County Circuit Court, Thirteenth Division, entered an order appointing John Collins Rogers's wife, Barbara Rogers, as guardian of his person and estate. Prior to the initiation of guardianship proceedings, John worked as a financial investor at John Collins Rogers & Co. An accounting firm was hired to audit John's books, and it was

discovered that he was depositing money from clients' trusts into a single commingled account that he used to pay his personal expenses. One entity affected by John's actions was the Martin Family Trust. As a result of John's business practices, the Martin Family Trust obtained a $723,167.76 consent judgment against Barbara in her capacity as John's guardian.[1]

Later, Florida Martin Ritchie and Katherine Ann Martin Jaco, in their capacities as trustees of the Martin Family Trust, petitioned the circuit court to set aside the order appointing Barbara as guardian. They alleged that the order should be set aside because it was granted without adherence to Arkansas law for the appointment of guardians—pertinent to this appeal is their allegation that Barbara's petition should not have been granted because it lacked the requisite professional evaluation of John's medical and physical condition. Barbara defended her status as John's guardian, and the circuit court denied the request to set aside the guardianship order.

As guardian of John's estate, Barbara was responsible for exercising due care to protect and preserve his estate and to regularly account for it so that, in the event of his death, she could deliver assets to the persons entitled to them. *See generally* Ark. Code Ann. § 28-65-301 (Repl. 2012). Barbara failed to comply with her statutory responsibilities. She did not perform an inventory, nor did she provide the circuit court with an annual accounting. Additionally, she utilized two family bank accounts to pay all expenses.

---

[1]Barbara sought and obtained a guardianship over John seven days before a jury trial was scheduled to begin in the matter of *Florida Martin Ritchie, et al. v. John Collins Rogers*.

John died in June 2007. His estate was assigned to the Pulaski County Circuit Court, Ninth Division. In January 2008, Florida Martin Ritchie requested to be appointed as the personal representative of John's estate by virtue of the Martin Family Trust's judgment against John. The circuit court appointed Florida as personal representative of John's estate and entered an order transferring the guardianship case, previously assigned to the Thirteenth Division, to the Ninth Division.

Barbara filed a final accounting and motion to terminate the guardianship shortly following the January 2008 hearing. Florida, as personal representative of the estate, objected to several of Barbara's expenditures that were found to be expenses of the guardianship.

The parties disputed for several years whether certain expenditures were allowable expenses of the guardianship. Barbara consistently argued that the guardianship was insolvent, and Florida, on behalf of the estate, asserted that the guardianship had a surplus that could be paid to its creditors. Because of Barbara's actions and inactions as John's guardian, the circuit court had understandable difficulty in surmising whether John's estate had any assets at his death.

A hearing was convened in May 2009. The parties agreed that Barbara would file an amended accounting because the previous filing did not reflect all receipts and disbursements. Additionally, the circuit court heard argument from Barbara's counsel on whether, in cases in which the guardian is the spouse of the ward, allowable expenses of the guardian can include the expense of maintaining the household in which the guardian and ward reside—in essence, whether a ward's funds may be used to support others. The circuit

3

court found as a matter of law that Barbara was not entitled to support herself with John's funds.

Barbara prepared an amended final accounting in August 2009, and Florida objected to it. In November 2009, the parties appeared again in circuit court, and the circuit court took evidence on the expenditures and assets of the guardian. The hearing was adjourned without a formal ruling.

Several years later in April 2015, Barbara filed a second amended final accounting, and Florida again objected. The circuit court held a hearing in October 2015 and entered a final order in March 2016. This order allowed and disallowed certain expenditures made by Barbara during the pendency of the guardianship. The circuit court found that a balance of $56,431.87 was available to transfer to John's estate, transferred that amount to his estate, and closed the guardianship. Barbara timely filed her notice of appeal, and Florida timely filed her notice of cross-appeal.

On direct appeal, Barbara argues that the circuit court erred by (1) finding as a matter of law that she was not entitled to support herself with John's funds, (2) disallowing certain expenditures that were made to care and maintain the ward and his dependents without ruling on whether they were reasonable and proper and expended on the ward, (3) specifically disallowing expenditures for food and nutrition and storage-unit fees, and (4) refusing to find the order appointing Barbara as guardian void on its face. On cross-appeal, Florida contends that the circuit court erred in allowing two expenditures as expenses of the guardianship—funeral expenses and MetLife/NE Financial Life Insurance premiums.

SLIP OPINION

## II. *Standard of Review*

Probate cases are generally reviewed de novo, and this court does not reverse a circuit court unless its findings are clearly erroneous. *Seymour v. Biehslich*, 371 Ark. 359, 266 S.W.3d 722 (2007). A finding is clearly erroneous when, although there is evidence to support it, the appellate court is left on the entire evidence with the firm conviction that a mistake has been committed. *Id.* However, we give no deference to the circuit court on matters of law. *Freeman v. Rushton*, 360 Ark. 445, 202 S.W.3d 485 (2005).

## III. *Barbara's Direct Appeal*

The order appointing Barbara as John's guardian was entered without the requisite evidence of John's incapacity from a qualified professional. *See generally* Ark. Code Ann. §§ 28-65-211 & 28-65-212. We begin our analysis by considering whether this deficiency renders the guardianship void on its face because the disposition of this question affects the remaining issues on appeal.

It is clear that in this instance our statutory requirements were not followed and the circuit court should not have initially granted this guardianship. However, we decline to reverse on this point. "It is fundamental that, pursuant to the doctrine of invited error, an appellant cannot request a ruling . . . and then complain of that ruling on appeal." *Sec. Pac. Hous. Servs., Inc. v. Friddle*, 315 Ark. 178, 182, 866 S.W.2d 375, 377 (1993). Here, it was Barbara who requested the guardianship and she who failed to obtain the requisite professional evaluation. Furthermore, Barbara defended the validity of the guardianship when Florida and Katherine Ann Martin Jaco, in their capacities as trustees of the Martin

Family Trust, attempted to have it set aside. Pursuant to the invited-error doctrine, Barbara is precluded from arguing that the guardianship is void. We affirm on this point.

In each of Barbara's remaining points on appeal, she challenges the circuit court's disallowance or reduction of certain expenditures made during the pendency of John's guardianship. Those expenditures include food and nutrition expenses, automobile payments, automobile-insurance premiums, storage-unit-rental fees, condominium-maintenance fees on the house shared by Barbara and John, maintenance and repair on the house, property and casualty insurance on the house, property taxes on the house, and life insurance premiums.

Barbara contends that the circuit court erred by disallowing or reducing these expenditures when it ruled as a matter of law that funds of the guardianship could not be expended for Barbara's support. We agree.

In *Stautzenberger v. Stautzenberger*, our supreme court held that expenditures that contributed to the ward's care and maintenance and that were consistent with the ward's previous pattern of expenditures and charitable giving could constitute permissible payments for the ward's maintenance. 2013 Ark. 148, 427 S.W.3d 17. This decision contemplates that one could continue to be supported by a ward as long as the support may be "construed to be proper for the care and maintenance of the ward." *Id*. at 6, 427 S.W.3d at 21. Additionally, the approval of these expenditures is predicated on whether they are "reasonable and necessary." *Id*. at 8, 427 S.W.3d at 22.

Barbara was John's spouse, and it was her testimony that he was the sole financial provider for almost the entirety of their forty-year marriage. The circuit court erred as a

matter of law when it disallowed these expenditures made for the benefit of Barbara without consideration of whether they were reasonable, necessary, and proper for the care and maintenance of the ward. Accordingly, we reverse and remand this issue to the circuit court to consider whether these expenses were reasonable and proper and could be construed to be proper for John's care and maintenance.

We acknowledge and accept the circuit court's finding that Barbara's actions made it "almost impossible" to determine which expenditures were reasonable and proper and actually expended for the ward. But irrespective of this finding, our law requires that the circuit court determine whether expenditures for Barbara's benefit were reasonable, necessary, and proper for the care and maintenance of the ward, and we direct the circuit court to review the ample evidence before it to make this determination.

With this conclusion reached, we cannot delve into the merits of Barbara's additional arguments on appeal wherein she contends that the circuit court erred by its blanket disallowance of certain expenditures and by specifically disallowing expenditures for food and nutrition and storage-unit fees. The outcome of these issues necessarily requires the circuit court to first consider whether it was reasonable and proper for funds of the guardianship to be expended on Barbara's behalf.

Nevertheless, we recognize that certain issues are likely to arise on remand of this case to the circuit court, and we take this opportunity to acknowledge that it is apparent the circuit court made a clerical error when calculating food and nutrition expenses—the circuit court indicated in its order that it had reduced the amount requested by Barbara to account for only the money spent to feed John and his caregiver, although Barbara had already

reduced the amount. Additionally, Barbara, as John's guardian, had an obligation to care and provide for John; accordingly, the circuit court should allow, at a minimum, some expenditures for John's housing, utilities, and transportation.

IV. *Florida's Cross-Appeal*

On cross-appeal, Florida advances two arguments in favor of reversal. She challenges the circuit court's finding that John's funeral expenses and the payment of life insurance premiums were allowable expenses of the guardianship. [2]

First, Florida argues that the circuit court erred in finding that the $14,120.42 Barbara paid for John's funeral expenses was an allowable expense of the guardianship. We agree. A guardianship terminates by law when the ward dies unless the guardian takes steps to convert the case to a decedent's estate. *See* Ark. Code Ann. §§ 28-65-401(a)(2) & 28-65-323. Barbara never attempted to administer John's estate after his death. In fact, Florida petitioned to be named administrator of John's estate because none of his family members made efforts to become the personal representative of his estate. Because the guardianship terminated at John's death, his funeral expenses were not proper expenses of the guardianship, and we reverse and remand on this point and direct the circuit court to disallow this expenditure.

Florida also challenges the circuit court's ruling that the $1,274.66 paid in MetLife/NE Financial Life Insurance premiums was an allowable expense of the guardianship. Barbara's verified second amended final accounting indicates that the MetLife/NE Financial Life Insurance premiums were paid on existing policies for her life

---

[2]Barbara does not address Florida's arguments on cross-appeal.

SLIP OPINION

and John's life. Barbara testified that the MetLife insurance policy could have been hers and that she did not know how much the premium on her policy would have been. She concluded by saying that she just paid the same premiums John had historically paid.

On this point, we must again reverse and remand to the circuit court. It is clear from the evidence that the money expended on insurance premiums went toward policies on both Barbara's and John's lives. On remand, the circuit court is directed to consider whether the money expended for Barbara's insurance premiums was proper for the care and maintenance of John. If not, the circuit court is directed to reduce the allowable amount of this expenditure to account for only those premiums paid on John's behalf because the evidence is clear that only a portion of the $1,274.66 paid in life insurance premiums was for John.

Affirmed in part; reversed and remanded in part on direct appeal; reversed and remanded on cross–appeal.

VIRDEN and BROWN, JJ., agree.

*Wolff & Ward, PLLC*, by: *Rufus E. Wolff*; and *Rogers, LLP*, by: *John M. Rogers*, for appellant.

*Sharp & Sharp, P.A.*, by: *J. Baxter Sharp III*, for appellee.