Cite as 2019 Ark. App. 456

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-19-221

| | |
|---|---|
| IN THE MATTER OF THE GUARDIANSHIP OF L.J.P., A MINOR | Opinion Delivered   October 16, 2019 |
| DEREK PIKE<br>APPELLANT | APPEAL FROM THE SALINE COUNTY CIRCUIT COURT [NO. 63PR-16-587] |
| V. | HONORABLE BARBARA WEBB, JUDGE |
| MARILYN SHULER, BRENDA FORTHMON, AND RONNIE FORTHMON<br>APPELLEES | AFFIRMED |

## N. MARK KLAPPENBACH, Judge

Appellant Derek Pike appeals the August 23, 2018 order of the Saline County Circuit Court that denied his petition to terminate guardianship over his daughter LP and granted LP's maternal grandmother, appellee Marilyn Shuler, permission to intervene in the guardianship proceedings. Marilyn had sought to intervene and requested to be appointed LP's guardian or, alternatively, to be awarded grandparent-visitation rights. Marilyn was permitted to intervene, and she was awarded grandparent visitation, but she was not appointed LP's guardian. The circuit court ordered the paternal grandparents, appellees Brenda and Ronnie Forthmon, to continue as LP's guardians. Derek appeals, contending that (1) the circuit court erred in not terminating the guardianship because he had been declared a fit parent by court order; (2) the circuit court erred in requiring him to prove

that guardianship was (a) no longer necessary and (b) no longer in LP's best interest; and (3) the circuit court abused its discretion in permitting Marilyn to intervene. We affirm.

Arkansas Code Annotated section 28-65-401(b)(3) (Supp. 2017) governs this guardianship proceeding, and it provides that a guardianship may be terminated by court order "[i]f, for any other reason, the guardianship is: (A) No longer necessary; and (B) No longer in the best interest of the ward."[1] We review probate proceedings de novo, but we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *In re. Guardianship of W.L.*, 2015 Ark. 289, 467 S.W.3d 129. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id.* When reviewing the proceedings, we give due regard to the opportunity and superior position of the circuit court to determine the credibility of the witnesses. *Id.*

In 2011, Katie and Derek Pike were divorced in the Saline County Circuit Court and agreed to share joint custody of their then two-year-old daughter, LP. In November 2015, Marilyn (Katie's mother) was appointed the temporary guardian of LP by order of the probate division of the Saline County Circuit Court. The attorney ad litem conducted a thorough assessment of Katie, Derek, LP, and Marilyn, and opined that Katie was unstable and suffering from drug-and-alcohol addiction; that Derek was presently a viable parent for LP; and that guardianship was not needed at that time. In May 2016, Derek and Katie

---

[1]The prior version of this statute provided that a guardianship could be terminated if the guardianship was "no longer necessary or for the best interest of the ward." The prior version was in the disjunctive. In contrast, the legislature's 2017 enactment set a statutory requirement that in order to terminate a guardianship, both must be proved.

2

agreed that Derek would be awarded primary custody in the domestic-relations proceeding, subject to the visitation rights Marilyn had in the probate proceedings. As of mid-June 2016, Marilyn's temporary guardianship of LP was terminated.

By late 2016, Marilyn petitioned to be appointed LP's guardian as a result of both parents' instability and drug issues. The Forthmons (Derek's mother and stepfather) also petitioned to intervene, to acquire emergency custody, and to be appointed LP's guardians. Following a hearing in January 2017, the circuit court found both Derek and Katie to be unfit, awarded temporary guardianship of LP to the Forthmons, gave Marilyn visitation privileges, and gave Derek and Katie supervised visitation.

The matter was heard again in March 2017, and as a result, the circuit court entered an order in April 2017 granting permanent guardianship to the Forthmons. Both Katie and Derek had filed written consents to the Forthmons having guardianship over LP. Derek had pending criminal charges, and he had tested positive for marijuana, opiates, and hydrocodone. The April 2017 order made the following pertinent findings: (1) the Forthmons would be permanent guardians over then eight-year-old LP, (2) both Derek and Katie had entered written consent to permanent guardianship, (3) regardless of parental consent, both Derek and Katie were unfit, (4) Marilyn would be entitled to specific visitation, and (5) Derek and Katie would be permitted supervised visitation.

In separate paternity and child-support proceedings, Derek was found to be the father of a younger daughter, DP, whom he had with his girlfriend Kayla Skinner. In August 2017, Derek sought and was granted ex parte emergency custody of DP, taking the child

3

from Kayla. The order for emergency custody recited that Derek was "the fit and proper person" to have emergency custody of DP pending a hearing.

In September 2017, Derek filed a petition to terminate the guardianship over LP and to withdraw his prior consent. In November 2017, Marilyn sought to intervene, and she resisted the termination of guardianship, contended that guardianship was still needed to protect LP from her unfit parents, and asked to be appointed LP's guardian. Derek filed a motion to dismiss Marilyn's requests because she had not been permitted to intervene, so she had no standing. Marilyn filed a response in which she pointed out that she was the original petitioner, she had existing visitation rights, and Derek's motions should be dismissed in their entirety.

The pending motions and petitions were considered at a July 2018 hearing. At that point, the Forthmons were in favor of Derek regaining custody of LP, which is what Derek wanted. At the beginning of the hearing, Derek's attorney conceded on the record that Derek had the burden of proving that he is a fit parent.

Derek testified that he had lived in Saline County until about May 2018, when he moved to a house in Maumelle with his youngest daughter DP. He explained that DP's mother Kayla had a drug problem and had made up criminal allegations against him, planting guns and drugs in his house; that she admitted later to fabricating those allegations; and that he and Kayla were no longer in a relationship. Kayla had supervised visitation with DP on alternate weekends. He said that he originally agreed to guardianship of LP in March 2017 because of the pending false criminal allegations, although the charges were dropped in August 2017. Derek had his own heating and air business, and he had regular business

4

hours, although much of his time off was spent caring for DP. He said he owns his own home, he is drug free, he does not expose LP to his rock band or its associated activities, and he should have custody of LP as well as DP. If he regained custody, he would move LP from her school in Benton to a school in Maumelle. Derek and Marilyn did not have a good relationship, but he was willing to work with her because she is ten-year-old LP's grandmother. He was appreciative of all that his mother and stepfather had done for and with LP.

Derek's parents testified about their guardianship over LP and their life in Benton. They believed that it was in LP's best interest to be in her father's care, but if the guardianship was not going to terminate, then they wanted to continue to be her guardians. They said that Derek's move to Maumelle had caused him to see LP less, and they did not want him to disrupt LP's school-night routine, so he did not visit her during the week. Derek's mother acknowledged that Derek has bipolar disorder and has a temper but said he does not display his temper in front of the children. She explained that Derek has an older teenage son, JP, but they do not see him much anymore.

Marilyn's other daughter (LP's aunt) testified that Derek has a temper problem, had punched a hole in a wall, and had kicked a hole in a back door. She said that he has a history of aggression, hatefulness, drug abuse, and being around unsavory people, and she worried about LP's well-being as a consequence of being around him.

Marilyn stated that she has lived in Benton for seventeen years. She believed that Derek loves LP, but he has drug- and alcohol-abuse issues, domestic-violence issues, aggression, and issues with destroying and stealing property. She thought he is a bad father

5

and that she would be a better parent than either he or the Forthmons. Marilyn thought the Forthmons did not let LP participate in as many activities as she had, and they were in denial about Derek's drug and violence problems. Marilyn acknowledged that her daughter, Katie, who was in prison, is also an unfit parent. She was concerned that if Derek regained custody, he would make good on his threats to cut them out of LP's life. Marilyn maintained that she is a cornerstone in LP's life, and she is the person best suited to be LP's guardian.

In conjunction with this hearing in early July 2018, Derek was ordered to undergo drug testing. The hair tests were negative, but the fingernail drug screen was positive for cannabinoids and carboxy-THC. A second drug screen was ordered in late July, and those tests were negative.

Having taken the matter under advisement for approximately a month, the circuit court issued a letter opinion. The circuit court found, in summary, that LP was thriving in the care of the Forthmons; that moving LP would require her to change schools and be away from her friends and church; that Derek continued to put his needs before LP's by moving away from both sets of grandparents and toward a more convenient location for him to participate in things with his rock band; that Derek was not credible in his statement that he no longer used drugs; that Derek should take parenting classes, undergo family counseling, seek drug-and-alcohol counseling, and pass random drug tests in an effort to work toward unsupervised visitation; that Marilyn would have visitation and be the alternate guardian should the Forthmons no longer wish to be guardians; and that LP should resume counseling. A formal order was filed to memorialize the findings, and this appeal followed.

Derek's first two points on appeal are intertwined. Derek's first point asserts that because he was deemed a fit parent in the temporary emergency order filed in August 2017 in the paternity case concerning DP, then he was definitively a fit parent for all purposes from that date forward to include LP's guardianship case. Derek's second point asserts that because he is, by court order, a fit parent, then the circuit court erred in requiring him to prove that the guardianship is no longer necessary and that it is no longer in LP's best interest. Derek's argument fails.

The order in the *paternity* case was an *emergency temporary* order by its own terms. Second, the *paternity*-case order concerned emergency removal of DP from her mother's custody, which is wholly separate from LP's situation in the guardianship case. More to the point, Derek was found unfit as a parent in these guardianship proceedings as of the circuit court's April 2017 order. He remained "unfit" by court order in the guardianship proceedings going into the hearing on his petition to terminate the guardianship over LP.

Equally as important, Derek's attorney conceded at the outset of the hearing on his petition to terminate LP's guardianship that Derek bore the burden to establish that he is a fit parent, completely contrary to the position he now takes on appeal. It is well settled that under the doctrine of invited error, a party may not complain on appeal of an erroneous action of a circuit court if he or she induced or acquiesced in that action. *See Rogers v. Ritchie*, 2017 Ark. App. 420, 528 S.W.3d 272 (holding that pursuant to invited-error doctrine, Rogers was precluded from arguing that guardianship was void on appeal where she had requested the guardianship without obtaining the requisite professional evaluation and had argued its validity when trustees moved to set it aside); *Clark v. Ark. Dep't of Human*

7

*Servs.*, 2016 Ark. App. 286, at 6, 493 S.W.3d 782, 787 (holding that pursuant to invited-error doctrine, where Clark's attorney argued to the circuit court that a "significant change of circumstances" was required to effectuate a change of custody that arose solely from dependency-neglect action, she could not then argue on appeal that the circuit court had used the wrong standard from the domestic-relations proceedings). Derek invited the error he now complains of on appeal, which cannot form the basis of reversible error.

Derek's third point on appeal asserts that the circuit court erred in not dismissing Marilyn's response to his petition to terminate the guardianship because she should not have been permitted to intervene. He contends that Marilyn lacked standing because she was not already a party, and she did not stand in loco parentis to LP, meaning that she had no right to participate. We disagree that Derek has shown reversible error.

Permissive intervention is a matter within the circuit court's discretion and is subject to the abuse-of-discretion standard of review. *Whaley v. Beckham*, 2016 Ark. 196, 492 S.W.3d 65. When persons have a close relationship to the matter before the circuit court, which is undoubtedly true here for Marilyn as LP's grandmother and her longstanding involvement in LP's care and upbringing, we have no hesitation in holding that there was no abuse of discretion in permitting Marilyn to intervene in this guardianship proceeding. *Compare Whaley*, *supra*. Moreover, Marilyn had already been granted visitation privileges that were ongoing, and the circuit court ultimately found that she would be LP's alternate guardian. Marilyn was, for all intents and purposes, already a party to the guardianship proceedings before she filed a response to Derek's petition and formally sought to intervene.

For the foregoing reasons, we affirm.

8

Affirmed.

HIXSON and BROWN, JJ., agree.

*Brooks A. Wiggins*, for appellant.

*Short Law Firm*, by: *Lee D. Short*, for separate appellee Marilyn Shuler.